UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM LORENZ,

    *Plaintiff*,

*v*.                                                                CASE NO. 13-CV-11442

COMMISSIONER OF                              DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,                               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12.)

Plaintiff William Lorenz was 49 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 56.) Plaintiff's work history includes employment in maintenance at a foundry for eleven years. (Tr. at 116.) Plaintiff filed the instant claims on December 5, 2009, alleging that he became unable to work on March 9, 2009. (Tr. at 86, 90.) The claims were denied at the initial administrative stages. (Tr. at 66.) In denying Plaintiff's claims, the Commissioner considered trauma to the pelvis and spondylolisthesis L5 on S1, Grade 1, and degenerative disc disease as possible bases for disability. (*Id.*) On August 17, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Brenton L. Rogozen, who considered the application for benefits *de novo*. (Tr. at 9-22, 50-65.) In a decision dated November 14, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 19.) On November 29, 2011, Plaintiff requested a review of this decision. (Tr. at 5-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 30, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On March 29, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S.

521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

3

claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*

4

*of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2013, and that he had not engaged in substantial gainful activity since March 9, 2009, the alleged onset

date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's back pain was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 18.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 47 years old, which put him in the "younger individual age 18 – 49" category. *See* 20 C.F.R. §§ 404.1563, 416.963. (*Id.*) At step five, the ALJ found that Plaintiff could perform a full range of light work. (Tr. at 15-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 18-19.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was injured at work in November 2006 when he "got pinned between a hopper and like the back of the hopper." (Tr. at 57.) Plaintiff returned to the same job but was unable to perform all the tasks and was let go after the company discovered that Plaintiff's coworkers were having to assist Plaintiff to complete his work. (Tr. at 58.) Plaintiff testified that he has "a hard time going up and down ladders" and "going up and down steps" and that "[b]ending over is like almost impossible." (*Id.*) Plaintiff stated that around 20 months after his accident, Dr. LeClair imposed restrictions on him, but he was nonetheless able to return to work and worked under those restrictions until March 2009. (Tr. at 59-60, 316.) Plaintiff indicated that he "pretty much set in a chair" but that he also could "fix a few odds and ends of stuff and tell the other guys what to do." (Tr. at 60.) The ALJ asked a vocational expert ("VE") whether the skills Plaintiff acquired would be transferable to light or sedentary work and the VE responded in the negative. (Tr. at 63-64.)

On November 17, 2006, the day Plaintiff was injured, he was treated at Hurley Medical Center. (Tr. at 173-95.) Plaintiff was diagnosed with pelvic fractures due to trauma to the pelvis from a "crush injury" by a 3,000 pound hopper at work. (Tr. at 179.) A CT scan of Plaintiff's chest, abdomen and pelvis showed "comminuted fracture of right superior pubic ramus extending into the anterior column of right acetabulum and comminuted fracture of left acetabulum[,]" a "minimally displaced fracture of left public ramus[,]" and a "right hemipelvis hematoma without any injury to the bladder." (Tr. at 195.)

Plaintiff was treated at Sebewaing Family Medicine from 2005 to 2011. (Tr. at 214-72, 310-12, 320-31.) On December 20, 2006, MRIs of Plaintiff's lumbar spine and pelvis showed "[b]ilateral L5 spondylolisthesis with grade I anterior spondylolisthesis of L5 on S1[,]" "moderate bilateral foraminal stenosis at this level" and "[m]oderate disc disease at L5-S1." (Tr. at 211.)

Plaintiff participated in physical therapy at Scheurer Hospital from December 2006 through January 2007. (Tr. at 196-213.) Upon discharge from physical therapy, it was noted that all short-term and long-term goals were met, that Plaintiff had "no further functional limitations," and that Plaintiff reported that his "[p]ain is virtually nonexistent at this time despite job duties as per prior status." (Tr. at 202.)

On January 29, 2007, Craig McManaman, D.O., examined Plaintiff for a "follow-up on his pelvic fractures" and noted that Plaintiff was "doing quite well and has progressed very well in physical therapy." (Tr. at 197.) Dr. McManaman found that Plaintiff could "ambulate satisfactorily," that he had "5/5 strength of bilateral lower extremities," and that his "[r]ange of motion of both hips is satisfactory." (*Id.*) Dr. McManaman concluded: "I am going to allow him to go back to work." (*Id.*)

On October 13, 2008, a CT scan of Plaintiff's pelvis showed "[m]ultiple pelvic phleboliths," but was otherwise "unremarkable." (Tr. at 234, 297.) A CT scan of Plaintiff's lumbar spine showed "[e]vidence of mild degenerative disc disease at L5-S1" and "[m]arginal osteophyte spurring aris[ing] from the L3-S1 vertebrae." (*Id.*)

On March 12, 2010, Natalie Gray, M.D., completed a Physical Residual Functional Capacity ("RFC") assessment. (Tr. at 298-305.) The assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about six hours in an 8-hour workday (if allowed to alternate between sitting and standing) and was unlimited in his ability to push or pull. (Tr. at 299.) The assessment also found that Plaintiff could occasionally crouch, should never climb ladders, ropes, or scaffolds, but could otherwise frequently perform postural activities. (Tr. at 300.) There were no manipulative, visual, communicative or environmental limitations established. (Tr. at 301-02.)

On May 13, 2010, Plaintiff underwent an independent medical examination ("IME") with Paul LaClair, M.D. (Tr. at 313-17.) Dr. LaClair noted that Plaintiff's "[s]trength is intact through both legs[,]" that Plaintiff was "able to ambulate without assistive device" and that his "[s]tep length is equal." (Tr. at 316.) Dr. LaClair diagnosed "[p]robable early post traumatic arthritis of the hips[,]" "Grade 1 lumbar spondylolisthesis," and "[l]eft trochanteric bursitis." (*Id.*) Dr. LaClair recommended that Plaintiff "may benefit from additional physical therapy to improve lumbopelvic posture and core strength" and that he "may benefit from interventional pain management such as sacroiliac joint injection or lumbar facet nerve blocks." (Tr. at 317.) Finally, Dr. LaClair indicated that Plaintiff should have permanent activity restrictions, "including 25 pound maximum lift, no repetitive bending, stooping or twisting and sit/stand option." (*Id.*)

In his Daily Activity Report, Plaintiff described his daily activity as "have coffee – get dressed – do farm chores w/wife – do small odds and ends that need to be done – for ex – laundry – cook etc. – sit and watch TV – do stretch exercises – eat meals – bed." (Tr. at 138.) Plaintiff indicated that he has no problems with personal care other than it is hard to bend over, he is able to prepare his own meals, do some household repairs, do his laundry (as long as he does not carry it up and down stairs), mow the lawn occasionally, walk, drive a car, ride in a car, handle his own finances, watch television, work with the cattle on his farm, and socialize on a daily basis. (Tr. at 139-42.)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a full range of light work. (Tr. at 15-17.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

## 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ erred in assessing Plaintiff's credibility and failed to formulate a hypothetical question for the vocational expert to respond to, thereby improperly basing his decision regarding the jobs Plaintiff could perform on his own opinion. (Doc. 9 at 6-15.)[2]

### a. Credibility Determination and RFC Analysis

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379

---

[2] Although Plaintiff refers to the treating physician rule, he does not indicate what, if any, treating physician's opinion was at issue in the instant case. (Doc. 9 at 13-14.) I therefore do not consider this issue actually raised. Even if Plaintiff had referred to Dr. LaClair's findings, I suggest that they are not inconsistent with the ALJ's RFC findings. (Tr. at 316-17.)

(6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. §§ 404.1528(a), 416.929(a),

"[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)     [D]aily activities;

(ii)     The location, duration, frequency, and intensity of . . . pain;

(iii)     Precipitating and aggravating factors;

(iv)     The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)     Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ considered each of the above factors. (Tr. at 15-17.) I suggest that the ALJ's findings as to credibility and RFC are supported by substantial evidence. Although Plaintiff suffered multiple fractures in November 2006, upon discharge from physical therapy in early 2007 it was noted that all short-term and long-term goals were met, that Plaintiff had "no further functional limitations," and that Plaintiff reported that his "[p]ain [was] virtually nonexistent at this time despite job duties as per prior status." (Tr. at 202.) Plaintiff's treating physician, Dr. McManaman, noted on January 29, 2007, that Plaintiff was "doing quite well[,]" that he could "ambulate satisfactor[il]y[,]" that he had "5/5 strength of bilateral lower extremities[,]" that his "[r]ange of motion of both hips [was] satisfactory," and that Plaintiff should

return to work. (Tr. at 197.) Plaintiff's "degenerative disc disease at L5-S1" was only "mild." (Tr. at 234, 297.) The ALJ's findings were also supported by the RFC Assessment and the IME. (Tr. at 298-305, 313-17.)

I further suggest that the ALJ's findings are supported by Plaintiff's own statements that he is able to manage his personal care (other than it being hard to bend over), able to prepare his own meals, do some household repairs, do laundry (as long as he does not carry it up and down stairs), mow the lawn occasionally, walk, drive a car, ride in a car, handle his own finances, watch television, work with the cattle on his farm, and socialize on a daily basis. (Tr. at 139-42.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Finally, I note that Plaintiff has been treated with physical therapy and some pain medication only; such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that substantial evidence supports the ALJ's conclusions.

Accordingly, I suggest that the ALJ's findings that Plaintiff was not fully credible, that he could perform a full range of light work, and that he is not disabled are all supported by substantial evidence and should not be disturbed.

    **b.**    **Lack of Vocational Expert Testimony**

In the instant case, the ALJ determined that Plaintiff could perform a full range of light work, based on his examination of the evidence of record. (Tr. at 15-17.) As indicated above, I suggest that these findings are based on substantial evidence.

The ALJ then concluded that a "finding of 'not disabled' is directed by Medical-Vocational Rule 202.18." (Tr. at 18.) The Medical-Vocational Guidelines are commonly referred to as the "grids." The Sixth Circuit has "held that the SSA may not rely on the grids [i.e., Medical-Vocational Rules] alone to meet its step-five burden where the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008). Therefore, if the instant Plaintiff had any nonexertional impairments, the ALJ would have been in error. However, there are no nonexertional limitations on the evidence of record; therefore, the ALJ was not required to pose a hypothetical to the VE and could instead, as he did, rely on the grids. I therefore suggest that this issue does not undermine the ALJ's findings which are supported by substantial evidence.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections

a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/ Charles E. Binder
                                            CHARLES E. BINDER
Dated: April 18, 2014                           United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: April 18, 2014                           By    s/Patricia T. Morris
                                                      Law Clerk to Magistrate Judge Binder